poration, which certificate was filed in Delaware, but sworn to here. This court and the Court of Appeals held that the indictment was good. By the dilatory proceedings of the defendants, they postponed an inquiry into the facts of the case for two years. The provision of section 668 of the Code of Criminal Procedure may leave it discretionary with the court in which the indictment is pending to dismiss, and the words "good cause to the contrary" may possibly be construed as indicating that it is the duty of the court to dismiss unless good cause for not doing so is shown. Here that cause is shown. It appears from the affidavit of Mr. Nott, the assistant district attorney, that the case was delayed by various appeals taken by the defendants, and that no plea was made until November, 1903; that since that date the case has been in his hands, and he has been at work on it; that it is a complicated case; that the indictments allege that the defendants committed perjury in swearing that $1,000,000 capital stock of the Delaware Surety Company had been paid in in full; that the case involves, to a large extent, negative proof, and that the affairs of the company had to be investigated, and it was not until after notice was served on the 12th of July, 1904, that the indictments would be taken up for trial, that this motion to dismiss was made; that the district attorney is ready to try the indictments, and will do so as soon as the court would take up bail cases. The order from which the appeal is taken recites that on the 25th of July the district attorney was ready to proceed with the trial, but it was delayed by reason of the fact that no bail cases, of which this is one, would be tried before October, 1904, under the rules of the Court of General Sessions. The order was not appealable, but, even if it were, good cause is shown why the indictment should not have been dismissed.

The appeal from the order should be dismissed. All concur.

---

(100 App. Div. 449)

### FRANK v. MERCANTILE NAT. BANK OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 6, 1905.)

1. BANKRUPTCY—ACTION TO RECOVER DEPOSIT—SET-OFF—STATUTE.

Bankr. Act July 1, 1898, § 68, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450], provides that in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated, and one debt shall be set off against the other; and subdivision "b" of the same section provides that a set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which is not provable against the estate, or was purchased by or was transferred to him after the filing of the petition, or within four months before such filing, with a view to such use, and with knowledge that such bankrupt was insolvent, or had committed an act of bankruptcy. *Held*, in an action by a trustee in bankruptcy to recover a deposit in a bank due to the bankrupt, that defendant, as the bank's assignee, subsequent to the adjudication in bankruptcy, was entitled to set off notes of the bankrupt which were discounted by the bank prior to the filing of the petition, whether matured or unmatured at the date of the adjudication in bankruptcy.

Appeal from Special Term, New York County.

Action by Leo Frank, as trustee in bankruptcy of Solomon Ullman, against the Mercantile National Bank of the City of New

York. From an interlocutory judgment sustaining demurrer to counterclaims and set-offs, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

E. N. Sykes, for appellant.

Charles Crossman, for respondent.

INGRAHAM, J.   The plaintiff, as trustee in bankruptcy of Solomon Ullman, commenced this action against the defendant to recover a deposit due to the bankrupt from the National Broadway Bank upon the day that an involuntary petition in bankruptcy was filed in the District Court of the United States asking that the bankrupt be adjudicated an involuntary bankrupt. The complaint alleges that subsequent to the adjudication in bankruptcy the National Broadway Bank duly assigned, transferred, and set over to the defendant all the property, assets, and effects of the National Broadway Bank, and the defendant agreed to assume the payment of and to pay all the liabilities of the said National Broadway Bank. The defendant does not deny that there was on deposit with the Broadway Bank upon the date of the filing of the petition in bankruptcy the sum of money to recover for which the action was brought, but sets up seven set-offs and counterclaims as a defense to the plaintiff's cause of action. These are substantially alike except as to the dates and the amounts of the various promissory notes set forth. The first set-off and counterclaim alleges that on or about the 1st of December, 1902, Solomon Ullman, the bankrupt, made his promissory note in writing, dated on said day, wherein and whereby he promised to the order of himself the sum of $1,250 four months after said date, and on the same day indorsed and delivered said note to the National Broadway Bank for value; that thereafter, and on or about the 21st day of April, 1903, the National Broadway Bank indorsed and delivered said note to this defendant for value; that on or about the 7th day of April, 1903, an involuntary petition in bankruptcy was filed in the United States District Court for the Southern District of New York, praying that said Solomon Ullman be adjudicated a bankrupt, and that thereafter said Ullman was duly adjudicated a bankrupt, and the plaintiff was duly elected and duly qualified as trustee of the estate of said bankrupt; that no part of said note has been paid, and that the sum of $1,250, with interest thereon from the 1st day of April, 1903, is now due and owing to the defendant. It will be noticed that this note was held by the National Broadway Bank, to whose credit Ullman had the amount which the plaintiff seeks to recover in this action, and that this note became due prior to the time that the involuntary petition in bankruptcy was filed. The subsequent counterclaims or set-offs, however, set up notes which became due subsequent to the adjudication in bankruptcy. The demurrer to these several counterclaims was sustained upon the ground that the set-offs could only be allowed where the demands sought to be set off were due and payable prior to the filing of the involuntary petition in bankruptcy. At the time this involuntary petition was filed the National

Broadway Bank had upon deposit to the credit of the bankrupt a sum of money, and at the same time the National Broadway Bank held these obligations of the bankrupt. Prior to the time of the adjudication of bankruptcy these obligations of the bankrupt had been transferred to the defendant, and the defendant had assumed the obligations of the National Broadway Bank to its depositors. If the rights and liabilities of the parties are to relate back to the filing of the involuntary petition, then if the National Broadway Bank had the right to set off one demand against the other, what passed to the defendant was the obligation of the bankrupt, and a liability for the amount due to the bankrupt, and the devolution of liability was, I think, subject to the right of set-off which existed in the National Broadway Bank. If the right of the parties is to be determined as of the date of the adjudication of bankruptcy, then the defendant, having assumed the payment of the indebtedness to the bankrupt, at the same time owned the obligations of the bankrupt and the right of set-off existed. Pending the determination of the involuntary petition in bankruptcy the liability for the deposit was assumed by the defendant, who also acquired the obligations of the bankrupt. The right of the trustee in bankruptcy to recover the amount due to the bank from the defendant depended upon the assumption by the defendant of the obligation of the Broadway Bank. That obligation was to pay that deposit, subject to its right to set off the amount of the notes, and it was that liability that was devolved upon the defendant, and not an absolute liability regardless of the right of set-off that existed, and to which the obligation of the bankrupt or his trustee in bankruptcy as against the Broadway Bank was subject. It seems to me clear that under the provisions of the bankruptcy law a debtor of a bankrupt is entitled to set off his claim against the bankrupt, whether matured or unmatured at the date of the adjudication in bankruptcy. Section 68 of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]) provides that:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

Subdivision "b" of this section provides that:

"A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate; or (2) was purchased by or transferred to him after the filing of the petition, or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent, or had committed an act of bankruptcy."

It is not claimed that this debt of the defendant against the bankrupt was not provable against the estate. Nor is it alleged that it was purchased by or transferred to the defendant with knowledge or notice that the bankrupt was insolvent, or had committed an act of bankruptcy. These notes were all discounted by the Broadway Bank prior to the filing of the involuntary petition, and at that time were subsisting obligations of the bank held by the Broadway Bank. They were all provable against the estate of the bankrupt,

and in possession of the Broadway Bank. The claim of the bankrupt against the Broadway Bank was subject to the set-off of the existing indebtedness of the bankrupt to the Broadway Bank. The defendant assumed the indebtedness of the Broadway Bank, which was subject to this set-off, and acquired the obligations of the bank which the Broadway Bank was entitled to set off against this liability; and thus, when called upon by the trustee of the estate of the bankrupt to respond to this obligation to the bank, it was entitled to the same right that the Broadway Bank had to make the set-off.

I think, therefore, that the defendant was entitled to set off these obligations of the bankrupt, and that the judgment should be reversed, with costs, and the demurrer overruled, with costs, with leave to the plaintiff to withdraw the demurrer on payment of costs in this court and in the court below. All concur; PATTERSON, J., in result.